**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD PIERCE, KERRY HICKS, ANDREW KARRES, MICHELE FOTINOS, AMIL HIRAMANEK, LISA HUNT-NOCERA, NICOLE ANN RAY, ARCHIBALD CUNNINGHAM, RICHARD RIFKIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA CHIEF JUSTICE CANTIL-SAKAUYE, Chair of the Judicial Council, and MR. STEVEN JAHR, Administrative Director of the Administrative Office of the Courts,<br><br>Defendants. | No. C 13-01295 JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS, AND DENYING AS MOOT MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Docket Nos. 11 and 19.)** |

**INTRODUCTION**

Now before the Court for consideration are: (1) the Motion to Dismiss, filed by the Honorable Chief Justice of the Supreme Court of California and Chair of the Judicial Council, Tani Gorre Cantil-Sakauye ("Chief Justice Cantil-Sakauye"), and Steven Jahr ("Mr. Jahr"), Administrative Director of the Administrative Office of the Courts (collectively "Defendants"); and (2) the Motion for a Preliminary Injunction, filed by Plaintiffs, Ronald Pierce ("Mr. Pierce"), Kerry Hicks ("Ms. Hicks"), Andrew Karres ("Mr. Karres"), Michelle Fotinos ("Ms. Fotinos"), Amil Hiramanek ("Mr. Hiramanek"), Lisa Hunt-Nocera ("Ms. Hunt-Nocera"), Nicole Ann Ray ("Ms. Ray"), Archibald Cunningham ("Mr. Cunningham"), and Richard Rifkin ("Mr. Rifkin") (collectively "Plaintiffs").

The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument, the Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motion to dismiss and DENIES AS MOOT the motion for a preliminary injunction.[1]

## BACKGROUND

Each of the nine named Plaintiffs has been declared a vexatious litigant under California's Vexatious Litigant Statute ("VLS"), California Code of Civil Procedure Sections 391, *et. seq.* (*See* Compl. ¶¶ 9-32; *see generally* Docket No. 8, Plaintiffs' Request for Judicial Notice ("First RJN").) Further, those rulings were either made during the course of or made applicable to custody proceedings. (Compl., ¶¶ 9-32, 48-62; *see also* First RJN.)

On March 22, 2013, Plaintiffs filed this putative class action for declaratory and injunctive relief pursuant to the Civil Rights Act, 42 U.S.C. Section 1983. Plaintiffs assert seven claims for relief, each of which is premised on the basic argument that the VLS is unconstitutional as it applies to and affects parents in custody disputes.[2]

The Court shall address, to the extent necessary, additional facts in the remainder of this Order.

## ANALYSIS

**A.   Legal Standards Applicable to Motion to Dismiss.**

Defendants move to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). Federal

---

[1] Plaintiffs filed a sur-reply in connection with the motion to dismiss. Although Plaintiffs did not seek leave of court to do so, Defendants have not objected to that filing. Accordingly, the Court has considered it.

[2] Plaintiffs listed the Judicial Council as a defendant in paragraph 33 of their Complaint. In their opposition to the motion to dismiss, they concede that the Judicial Council would be immune from suit, and they state any reference to the Judicial Counsel as a defendant was inadvertent. (Docket No. 13, Plaintiffs' Opp. Br. at 3:23-25.)

2

1 courts can only adjudicate cases which the Constitution or Congress authorize them to
2 adjudicate: cases involving diversity of citizenship, or those cases involving a federal question,
3 or where the United States is a party. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511
4 U.S. 375, 377 (1994).

5 A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be
6 "facial or factual." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).
7 Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, as is the
8 case here, the factual allegations of the complaint are taken as true and the non-moving party is
9 entitled to have those facts construed in the light most favorable to him or her. *Federation of*
10 *African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996).

11 A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the
12 pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited
13 to the allegations in the complaint, which are accepted as true and construed in the light most
14 favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).
15 Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a
16 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
17 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
18 do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*,
19 478 U.S. 265, 286 (1986)).

20 Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but
21 must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at
22 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the
23 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
24 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the
25 allegations are insufficient to state a claim, a court should grant leave to amend, unless
26 amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.
27 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th
28 Cir. 1990).

**B.     Requests for Judicial Notice.**

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, documents subject to judicial notice may be considered on a motion to dismiss.  In doing so, the Court does not convert a motion to dismiss to one for summary judgment.  *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

Plaintiffs filed a request for judicial notice in conjunction with their complaint, and they ask the Court to take judicial notice of various state court records.  (First RJN.)  Defendants filed a request for judicial notice in conjunction with their motion to dismiss, and they ask the Court to take judicial notice of two Judicial Council forms and of records filed in *Cunningham v. Mahoney*, 10-CV-3211-JSW ("Defendants' RJN").  (Docket No. 12.)  Plaintiffs filed a second request for judicial notice with their motion for a preliminary injunction, and they ask the Court to take judicial notice of additional court records ("Second RJN").  (Docket No. 20.)

Defendants have not objected to the First RJN, and Plaintiffs have not objected to Defendants' RJN.  On a motion to dismiss pursuant to either Rule 12(b)(1) or Rule 12(b)(6), the Court may take judicial notice of court records in other cases.  *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *cf. Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In addition, documents whose contents are referenced in a complaint and whose authenticity no party questions are a proper subject of judicial notice.  *See, e.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-24 (9th Cir. 2002).  However, the "court may not take judicial notice of a fact that is 'subject to reasonable dispute,'" and when a court takes judicial notice of a court document, a court "may do so not for the truth of the facts recited therein, but for the existence of the [document], which is not subject

4

1  to reasonable dispute over its authenticity." *Lee*, 258 F.3d at 690 (internal quotations and
2  citation omitted).

3  Accordingly, the Court GRANTS the First RJN and Defendants' RJN. However, the
4  takes judicial notice solely of the existence of those court records. Because the Court did not
5  reach the merits of Plaintiffs' motion for a preliminary injunction, the Court DENIES AS
6  MOOT the Second RJN.

7  **C.     Eleventh Amendment Immunity.**

8  Defendants argue that the Court lacks subject matter jurisdiction, because Plaintiffs'
9  claims are barred by the Eleventh Amendment to the United States Constitution. The Eleventh
10 Amendment provides that "the Judicial power of the United States shall not be construed to
11 extend to any suit in law or equity, commenced or prosecuted against one of the United States
12 by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.
13 amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States
14 may not be sued by private individuals in federal court." *Beentjes v. Placer County Air*
15 *Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005) (quoting *Bd. of Trs. of Univ. of Ala.*
16 *v. Garrett*, 531 U.S. 356, 363 (2001)).

17 Ordinarily, the Eleventh Amendment bars official-capacity suits against state officials
18 such as Defendants. *See Kentucky v. Graham*, 472 U.S. 159, 169-70 (1985). However, a suit
19 against state officials seeking prospective injunctive relief from unconstitutional state action is
20 not barred. *See id.* at 167 n.14; *Ex parte Young*, 209 U.S. 123, 159-60 (1908). This principle
21 generally is referred to as the *Ex parte Young* exception and is limited to prospective injunctive
22 relief from continuing or impending state action which violates the federal constitution or a
23 federal statute. *See Armstrong v. Wilson*, 124 F.3d 1019, 1026 (9th Cir. 1997). However, a
24 state officer sued in his or her official capacity "must have some connection with the
25 enforcement of the act, or else it is merely making him [or her] a party as a representative of the
26 State, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157.

27 Defendants do not dispute the fact that Plaintiffs seek prospective injunctive relief.
28 However, Defendants argue that neither Chief Justice Cantil-Sakauye nor Mr. Jahr has the

5

1  requisite connection to the enforcement of the allegedly unconstitutional act to trigger the *Ex*
2  *Parte Young* exception. With respect to Chief Justice Cantil-Sakauye, the Court finds
3  Defendants' argument foreclosed by *Wolfe v. Strankman*, 392 F.3d 358, 361 (9th Cir. 2004)
4  ("*Strankman*") and *Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2006) ("*George*").

5  In *Strankman*, the plaintiff brought claims pursuant to Section 1983 and raised a number
6  of arguments challenging the constitutionality of the VLS. The Ninth Circuit concluded that the
7  plaintiff could not bring claims against many of the named defendants, who had argued, *inter*
8  *alia*, that the claims were barred by Eleventh Amendment immunity. 392 F.3d at 361.
9  However, the court expressly stated that the plaintiff's "claims against Chief Justice George ...
10 fall within the *Ex parte Young* exception to sovereign immunity and are properly brought under
11 § 1983." *Id.* at 364. The Ninth Circuit reiterated that position in *George*, when it noted that it
12 had concluded in *Strankman* that, "despite the Eleventh Amendment," the plaintiff could seek
13 declaratory and injunctive relief against former Chief Justice George "and the California official
14 who administered vexatious litigant statutes, in their official capacities." *George*, 486 F.3d at
15 1123-24.

16 In their Complaint, Plaintiffs allege that Mr. Jahr is the Administrative Director of the
17 Court and that part of his duties include accomplishing the goals and priorities of the Judicial
18 Council. (Compl. ¶ 35.) However, Plaintiffs do not allege that Mr. Jahr holds a position similar
19 to the court services analyst named as a defendant in *George* and *Strankman*. Based on the
20 allegations in the Complaint, and the record in this case, the Court concludes that Plaintiffs have
21 not sufficiently alleged a sufficient connection between Mr. Jahr and the enforcement of the
22 VLS.

23 Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART Defendants'
24 motion on this basis. However, for the reasons set forth below, even if the claims against Mr.
25 Jahr are not barred pursuant to the Eleventh Amendment, the Court would still grant Mr. Jahr's
26 motion to dismiss.
27 //
28 //

**D.     The Claims Brought by Mr. Cunningham As an Individual Plaintiff Are Barred.**

Defendants also move to dismiss on the basis that Mr. Cunningham's claims are barred by principles of both claim and issue preclusion. At the hearing, the Defendants clarified that this argument applies only to the claims that Mr. Cunningham has asserted on his own behalf. This argument is premised on Mr. Cunningham's previous lawsuit, *Cunningham v. Mahoney, et al.*, 10-CV-3211 JSW (the "*Cunningham* litigation"), in which he also asserted that the VLS was unconstitutional on its face. (*See* Defendants' RJN, Ex. C (*Cunningham* Complaint); Ex. D (Order Granting Motion to Dismiss and Joinders Therein, and Denying as Moot Motion for Preliminary Injunction dated December 7, 2010 ("Dec. 7 Order").)

'Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in [a] prior action.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). Res judicata applies when, as between two (or more) actions, there is "'(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.'" *Id.*

Collateral estoppel, or issue preclusion, bars "relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn,* 56 F.3d 1128, 1131 (9th Cir. 1995). In order to show that collateral estoppel applies Defendants must show that "(1) the issue at stake [is] identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

In the *Cunningham* litigation, Mr. Cunningham named, *inter alia*, former Chief Justice George as a defendant in his capacity as Chair of the Judicial Council and alleged that the VLS was unconstitutional in the context of family law proceedings, because it violated his Due Process rights under the Fourteenth Amendment, his First Amendment rights to petition, and was unconstitutionally vague. (*Cunningham* Complaint ¶¶ 106-161.) Mr. Cunningham also

7

alleged that fee sanctions under the VLS amounted to an *ex post facto* law. (*Cunningham* Compl. ¶¶ 102-105.) Mr. Cunningham raises similar, if not identical, claims in this case. (*See* Compl. ¶¶ 79-104, 134-143.) Contrary to Mr. Cunningham's argument here, the Court's decision in the *Cunningham* litigation was not based solely on the *Rooker-Feldman* doctrine. Rather, the Court noted that Mr. Cunningham's theory of the case was that the VLS "is facially unconstitutional in the context of family law proceedings," and it expressly rejected Mr. Cunningham's *facial* challenges to the VLS. (*See* Dec. 7 Order at 5: 6:22-23, 7:25-26, and 8:17-18.)

Mr. Cunningham had a full and fair opportunity to litigate the issue of whether the VLS is unconstitutional in the context of the *Cunningham* litigation based on alleged violations of the Due Process Clause, the First Amendment, and as an *Ex Post Facto* law, and he is barred from re-litigating those issues and those claims, on his behalf, in this case.

Accordingly, the Court GRANTS the motion to dismiss on this basis as well.

**E.     Plaintiffs' Constitutional Claims.**

The remaining Plaintiffs bring their claims pursuant to Section 1983. In order to state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). Defendants do not dispute that Plaintiffs allege facts that show Defendants acted under color of state law. Rather, Defendants argue that Plaintiffs have not alleged facts that show they violated Plaintiffs' constitutional rights.

**1.     Equal Protection, Due Process and First Amendment Claims.**

In their first, second, fourth, and fifth claims for relief, Plaintiffs assert that the VLS violates their Equal Protection, Due Process, and First Amendment rights, on a number of theories. The Court concludes that these claims are foreclosed by *George*, even though the Ninth Circuit evaluated the VLS in the context of civil cases, rather than in the context of custody disputes.

With respect to the equal protection claim, equal protection jurisprudence is "concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Enquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). The Equal Protection Clause generally requires that similarly situated individuals be treated similarly. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). However, as set forth in *George*,

> [f]requent pro se litigants are not a suspect class meriting strict scrutiny. A state can rationally distinguish litigants who sue and lose often, sue the same people for the same thing after they have lost, and so on, from other litigants. When no bond is required, the California prefiling order does little more than require *sua sponte* review of a vexatious litigant's complaint to see whether it states a claim before imposing the burden of litigation on a defendant. The defendant could move to dismiss for the same reason, so the statute is not a substantial or irrational bar to access. Before the court can require security, it must determine in an individualized hearing that "the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation." The court must also make an individualized determination of the appropriate amount of security.

*George*, 486 F.3d at 1226 (omitting footnotes).

With respect to the First Amendment claims, the *George* court rejected a facial challenge to the VLS, because "[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, ... baseless litigation is not immunized by the First Amendment right to petition. ... [A] vexatious litigant may file potentially meritorious claims not intended solely to harass or delay, so the courthouse doors are not closed to him." *Id.* at 1125. Similarly, the fact that the VLS permits a court to impose a security requirement or pre-filing requirement does not render the VLS unconstitutional. Nor does that fact lead to the conclusion that the VLS amounts to a prior restraint on speech. *Id.* at 1126-27; *see also In re R.H.*, 170 Cal. App. 4th 678, 702-05 (2009). Before a court can require any person deemed to be a vexatious litigant to post security, it "must ... make an individualized determination of the appropriate amount of security." *George*, 486 F.3d. at 1127; *cf. Wolfgram v. Wells Fargo Bank*, 53 Cal. App. 4th 43, 60-61 (1997) (noting that judge reviewing a pre-filing request "presumably will take the nature of the action into consideration").

9

In addition, the *George* court rejected the plaintiff's due process claim and distinguished *Boddie v. Connecticut*, 401 U.S. 371 (1971), upon which Plaintiffs rely here.

> *Boddie* did not prohibit all financial barriers to litigation, regardless of frivolity or vexatiousness. "We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship." In *United States v. Kras*, the Supreme Court held that access to bankruptcy courts does not "rise to the same constitutional level" as divorce, and in *Ortwein v. Schwab* it reached the same conclusion for challenges to reduction of welfare benefits. Likewise, the California vexatious litigant statute does not deprive Wolfe of the opportunity to vindicate a fundamental right in court.

486 F.3d at 1126 (footnotes with citations omitted); *see also In re R.H.*, 170 Cal. At 702-05 (finding no due process violations in context of dependency proceeding).

There is no doubt that "a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest." *Lassiter v. Department of Social Servs. of Durham Cty.*, 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).) Indeed, in *M.L.B. v. S.L.J.*, the Supreme Court held that a state could not condition a parent's right to appeal the termination of parental rights on costs they could not afford. 519 U.S. 102, 107 (1996).

In reaching that conclusion, the Supreme Court noted that because of the finality involved, parental termination orders present a unique type of deprivation and, thus, differ from "mine run civil actions, *even from other domestic relations matters such as divorce, paternity, and child custody.*" *Id.* at 127 (emphasis added); *see also id.* at 121 ("In contrast to loss of custody, which does not sever the parent-child bond, parental status termination is 'irretrievabl[y] destructi[ve] of the most fundamental family relationship.'") (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). As they confirmed at the hearing, none of the Plaintiffs has had their parental rights fully, finally, and irrevocably terminated.

Accordingly, the Court concludes that, on its face, the VLS does not violate Plaintiffs' Equal Protection, Due Process or First Amendment rights.

//

### 3. Vagueness and Overbreadth.

In their third claim for relief, Plaintiffs set forth a number of specific ways in which they claim the VLS is unconstitutionally vague and overbroad. Again, these claims are foreclosed by *George*, in which the court stated that the VLS "is not unconstitutionally vague, because it gives fair notice to those who might violate the statute. It is not overbroad, because there is no constitutional right to file frivolous litigation." *George*, 486 F.3d at 1125.

### 4. Bill of Attainder.

In their sixth claim for relief, Plaintiffs allege that the VLS functions as bill of attainder. Contrary to Plaintiffs' allegations, "[t]he statute is not a bill of attainder, because it does not single anyone out." *George*, 486 F.3d at 1125.

### 5. *Ex Post Facto* Law.

In their seventh claim for relief, Plaintiffs allege that the VLS operates as an *ex post facto* law. The Court concludes that their facial challenge to the VLS on this basis fails as well. *See George*, 486 F.3d at 1127 ("The Double Jeopardy and Ex Post Facto Clauses do not apply because the vexatious litigant statute does not impose criminal penalties.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, IN PART, AND DENIED, IN PART. Plaintiffs' motion for a preliminary injunction is DENIED, AS MOOT. Although, in general, a court should grant Plaintiffs leave to amend, the Court concludes that the defects identified in this Order could not be cured by amendment.

The Court shall enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 13, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11

12